IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BEYOND SYSTEMS, INC.

v.                            : Civil Action No. DKC 2005-2446

KENNEDY WESTERN UNIVERSITY,
et al.                        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution are Defendants' motion to dismiss for lack of personal jurisdiction and failure to state a claim due to federal preemption (paper 14), Plaintiff's motion to take jurisdictional discovery (paper 25), Plaintiff's motion for leave to file supplemental authority (paper 38), and Defendants' motion for leave to supplement the record (paper 39). The issues have been briefed fully and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the court will grant Defendants' motion to dismiss for lack of personal jurisdiction and will deny Plaintiff's motion to take jurisdictional discovery.  The court also will grant Plaintiff's motion to file supplemental authority and deny as moot Defendants' motion to supplement the record.

**I.  Background**

On May 23, 2005, Beyond Systems, Inc., commenced this action by filing a complaint in the Circuit Court for Montgomery County, Maryland, against Defendants Kennedy Western University; Kennedy-Western University; KWU Acquisition, Inc.; Kennedy-Western

Educational Corp.; and Kennedy-Western University, LLC. Plaintiff, a corporation formed under the laws of the state of Maryland that maintains its principal offices in Maryland, provides access to a computer service and to the Internet. Defendants are residents of the state of California and Wyoming. Defendants operate an educational program that offers bachelors, masters, and doctorate-level degrees via the Internet.[1]

The complaint alleges that Defendants violated Md. Code Ann., Com. Law § 14-3002, relating to the transmission of unauthorized, false or misleading information through electronic mail.[2]

---

[1] Defendants state that only Kennedy-Western University, LLC, and Kennedy-Western Educational Corp. are active entities. The other Defendants became inactive no later than December 8, 2004. (Paper 14, attach. 1, ¶ 2, Patterson aff.).

[2] The relevant portion of this statute provides:

> (b)   A   person   may   not   initiate   the transmission, conspire with another person to initiate the transmission, or assist in the transmission of commercial electronic mail that:
> (1) is from a computer in the state or is sent to an electronic mail address that the sender knows or should have known is held by a resident of the state; and
> (2)(i) uses a third party's Internet domain name or electronic mail address without the permission of the third party;
> (ii) contains false or misleading information about the origin or the transmission path of the commercial electronic mail; or
> (iii) contains false or misleading information in the subject line that has the capacity, tendency,   or   effect   of   deceiving   the recipient.

(continued...)

2

Plaintiff alleges that between April 28, 2004, and July 2, 2004, Plaintiff received 1,007 commercial e-mail messages promoting online college degrees offered by Defendants, and those e-mails contained false or misleading information about the origin or transmission path or contained false or misleading information in the subject line.[3]  Plaintiff asserts that "Defendants initiated, conspired to initiate, and assisted in the initiation of commercial electronic mail messages to recipients in Maryland, including Plaintiff."  Plaintiff states that the e-mail transmissions interfered with its business operations and required the use of resources to separate these e-mails from legitimate e-mail messages, thereby causing a loss to Plaintiff.

Defendants removed the case to this court on the basis of diversity of citizenship, pursuant to 28 U.S.C. §§ 1332 and

---

[2](...continued)
>        (c) A person is presumed to know that the
>        intended recipient of commercial electronic
>        mail is a resident of the state if the
>        information is available on request from the
>        registrant of the internet domain name
>        contained in the recipient's electronic mail
>        address.

Md. Code Ann., Com. Law § 14-3002.

[3] A similar lawsuit based on both federal and California anti-spam law was filed in the U.S. District Court for the Northern District of California by a California plaintiff against the same Defendants.  *See Hypertouch v. Kennedy Western Univ.*, C-04-5203-SI (C.D.Ca., filed 2004).  Summary judgment was granted in favor of Kennedy Western on the federal claim and the state law claim was dismissed.  That case is now on appeal.

3

1441(b).   Subsequently,  Defendants  filed  a  motion  to  dismiss
arguing (1) Defendants lack minimum contacts with the forum state
of Maryland for this court to exercise personal jurisdiction and
(2) § 14-3002 is preempted by the federal CAN-SPAM Act, codified at
15 U.S.C. § 7701 *et seq.*, and violates the dormant commerce clause.

Plaintiff  asserts  that  this  court  may  exercise  personal
jurisdiction based on the following: (1) 1,007 e-mails promoting
Defendants'  program  that  were  sent  to  Maryland;  (2) Defendants'
enrollment of students who identify Maryland as their residence;
(3) the employment of at least two faculty members from Maryland;
(4)  Defendants'  interactive  website;  (5)  Defendants'  use  of  a
commission-based  referral  system,  which  may  generate  leads  from
Maryland;  (6)  a  listing  on  Defendants'  website  of  twenty-five
Maryland organizations that provide tuition reimbursement; and (7)
Internet  advertisements,  including  those  in  the  Verizon  SuperPages
for the Baltimore region and the Baltimore Maryland Yellow Pages.
(Papers 15, 25).

Defendants have submitted two affidavits by Robert Patterson,
the  chief  operating  officer  of  Kennedy-Western  University,  who
states  that  he  is  familiar  with  the  operations  of  the  co-
Defendants.   He declares that Defendants have never operated in
Maryland;  do  not  own,  use  or  possess  any  real  estate  or  other
property in Maryland; do not have a business address in Maryland;
do not pay Maryland taxes; do not have any investments in Maryland

4

or maintain an account with a Maryland-based banking institution; are not licensed or regulated by any Maryland governmental agency; do not have a mailing address, post office box, or telephone directory listing in Maryland; have never submitted to jurisdiction in any action in a federal or state court located in Maryland; have never advertised in any Maryland-based publication; and have never knowingly caused any tortious activity in Maryland.

Mr. Patterson asserts that Defendants employ third parties to investigate and approve marketers and to enforce the marketers' compliance with the federal CAN-SPAM Act. (Paper 14, attach. 1, ¶ 4, Patterson aff.). He states that the marketing process includes the use of "opt-in" e-mail lists so Defendants only contact potential students who have explicitly agreed to receive marketing offers. *Id.* Defendants provided a copy of Kennedy-Western University's campaign guidelines for 2004 to demonstrate Defendants' compliance with federal and Maryland anti-spam laws. In addition, Defendants employ one Maryland-based advertising specialist, Advertising.com, but the specialist did not handle any e-mail marketing between April and July of 2004. *Id.*

With respect to Plaintiff's allegations specifically, Mr. Patterson states that (1) Defendants did not send the e-mails in question, or otherwise authorize or approve of the sending of the e-mails (paper 33, attach. 1, ¶ 2, Patterson supp. aff.); (2) since Defendants were founded in 1984, thirty-two Maryland residents have

graduated from Defendants' courses of study (paper 14, attach. 1, ¶ 13, Patterson aff.); (3) of the 7,500 students currently enrolled, eight identify themselves as Maryland residents, and none enrolled as a result of e-mail advertising (paper 14, attach. 1, ¶ 13, Patterson aff.); (4) the two Maryland-based adjunct professors are both independent contractors and only one continues to reside in Maryland (paper 33, attach. 1, ¶ 4, Patterson supp. aff.); and (5) over the past twenty years, at least one student has been able to obtain reimbursement from each of the listed entities, although Defendants do not have any ongoing agreements with any of the listed Maryland entities (paper 33, attach. 1, ¶ 6, Patterson supp. aff.).  With respect to the Internet advertizing, Mr. Patterson states that all but one of the ads are national directories based outside Maryland that decide how to organize their information without Defendants' participation and control.  (Paper 33, attach. 1, ¶ 3, Patterson supp. aff.).  With respect to the Baltimore Maryland Yellow Pages, no one affiliated with Defendants placed this advertisement.[4]  *Id.*

In opposing Defendants' motion to dismiss, Plaintiff has provided several examples of the e-mails in question.  The sample

---

[4] Mr. Patterson states that the ad "does not appear to be part of the local content, and instead appears to be filling space which could be national advertising space.  This is consistent with the fact that this advertisement was not placed on a state level with this site, but rather on a national level." (Paper 33, attach. 1, ¶ 3g, Patterson supp. aff.).

e-mails are from "bargain-warrior.com," which has an address in Malaysia; "Media Solutions," which has an address in California; and "Stargazerdream," which has an address in Florida.  (Paper 15, exs. 2, 3, 4, 5).  Mr. Patterson states that none of Defendants' employees had heard of these entities before receiving the exhibits.  (Paper 33, attach. 1, ¶ 2, Patterson supp. aff.).

## II.  Standard of Review

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed.R.Civ.P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)).  If jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989).  If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396; *see also Mylan*, 2 F.3d at 60; *Combs*, 886 F.2d at 676.  In determining whether the plaintiff has proven

a *prima facie* case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan,* 2 F.3d at 60; *Carefirst*, 334 F.3d at 396.

## III. Analysis

Defendants have moved to dismiss Plaintiff's complaint on the ground that their contacts with Maryland are insufficient to subject them to personal jurisdiction.

A federal district court may exercise personal jurisdiction over a nonresident defendant "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Many courts have concluded that Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 212-13 (4th Cir. 2002).

In applying Maryland's long-arm statute, federal courts often state that "[the] statutory inquiry merges with [the] constitutional inquiry." *Carefirst*, 334 F.3d 390, 396-97 (citing

8

*Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135 (4th Cir. 1996), *cert denied*, 519 U.S. 983 (1996)); *see also ALS Scan*, 293 F.3d at 710; *Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F.Supp. 116, 119 n.2 (D.Md. 1995)(stating that the federal courts use the "merged into one" language).   The Court of Appeals of Maryland recently included this "merged into one" language in *Beyond Systems, Inc. v. Realtime Gaming Holding Co., LLC*, 388 Md. 1, 2 (2005), in which the court stated: "Because we have consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution, our statutory inquiry merges with our constitutional examination."[5] Courts that cite this "merged into one" language typically do not discuss the long-arm statute, and instead proceed directly to the constitutional analysis.   *See, e.g., Carefirst,* 334 F.3d at 397; *ALS Scan*, 293 F.3d at 711; *Realtime Gaming*, 388 Md. at 22.

The Court of Appeals more recently clarified that analysis under the long-arm statute remains a requirement of the personal jurisdiction analysis.   *Mackey v. Compass Mktg, Inc.*, 391 Md. 117,

---

[5] Earlier decisions by the Court of Appeals did not state that the statutory inquiry merges with the constitutional examination. Instead, the decisions explained the two steps are "interrelated" or "coextensive."   *See Mohamed v. Michael*, 279 Md. 653, 657 (1977)(stating that the court "has consistently indicated that the two considerations are interrelated"); *Geelhoed v. Jensen*, 277 Md. 220, 227 (1976)(stating that terms such as "persistent course of conduct" in Maryland's long-arm statute "are meant to be coextensive with the requirements of due process").

141 n.6 (2006)(stating that in *Realtime Gaming*, "[w]e did not, of course, mean . . . that it is now permissible to simply dispense with analysis under the long-arm statute").   In practical terms, then, the due process limitation defines the outer perimeter of Maryland's long-arm statute, but does not eliminate the need to identify a prong of the statute that appears to confer jurisdiction:

> Determining whether a Maryland court may exercise personal jurisdiction over a foreign defendant requires a two-step analysis. "First, the requirements under the long-arm statute must be satisfied, and second, the exercise of jurisdiction must comport with due process." *Mackey v. Compass Marketing, Inc.*, 391 Md. 117, 129-30, 892 A.2d 479, 486 (2006). We have construed our long-arm statute to authorize the exercise of personal jurisdiction to the full extent allowable under the Due Process Clause. *See, e.g., id.; Beyond Systems, Inc.*, 388 Md. at 14-15, 878 A.2d at 576; *Geelhoed v. Jensen*, 277 Md. 220, 224, 352 A.2d 818, 821 (1976) (citations omitted); *see also Stover v. O'Connell Associates, Inc.*, 84 F.3d 132, 135 (4th Cir. 1996). Thus, if to exercise specific jurisdiction in a given case would violate Due Process, we construe our long-arm statute as not authorizing the exercise of personal jurisdiction over the defendant. *See Mackey*, 391 Md. at 130, 892 A.2d at 486-87 (stating that "if the conspiracy theory [of specific personal jurisdiction] were inconsistent with due process, that inconsistency would require us to reject the conspiracy theory as an interpretation of the long-arm statute ∙∙∙ [;] we interpret the long-arm statute in light of the intent of the General Assembly to extend personal jurisdiction to the limits permitted by the Due Process Clause").

*Bond v. Messerman*, 391 Md. 706, 721-22 (2006).

Moreover, the Court of Appeals has recognized that there may be cases in which the facts satisfy constitutional due process but do not satisfy Maryland's long-arm statute. *See Krashes v. White*, 275 Md. 549, 559 (1975)("Perhaps fact situations will arise which will be deemed outside the scope of the Maryland 'long arm' statute, although there may be a constitutional basis for jurisdiction over the nonresident defendant."). In *Coleman & Associates*, then Chief Judge Motz offered the following insight about the intersection between the long-arm statute and the constitutional inquiry:

> In my view it does not follow from the principle that the General Assembly intended to "expand the exercise of personal jurisdiction to the limits of the due process clause" that the language of the long arm statute should be ignored; rather, a more correct understanding of the first principle is that to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause.

887 F.Supp. at 118-19 n.2.

It is appropriate, then, to begin with analysis of the long-arm statute.  Maryland's statute provides in part:

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State; . . .

Md. Code Ann., Cts. & Jud. Proc., § 6-103(b).  There is a limiting condition in subsection (a): "If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section."  In addition, the long-arm statute states that "[t]he provisions in this section apply to computer information and computer programs in the same manner as they apply to goods and services."  § 6-103(c)(2).  Computer information is defined as "information in electronic form which is obtained from or through the use of a computer or which is in a form capable of being processed by a computer.  The term includes a copy of the information and any documentation or packaging associated with the copy."  Md. Code Ann., Com. Law, § 22-102(10).  Computer program is defined as "a set of statements or instructions to be used directly or indirectly in a computer to bring about a certain result. The term does not include separately identifiable information content."  Md. Code Ann., Com. Law, § 22-102(12).

Plaintiff's complaint refers generally to § 6-103, but, like the opposition, does not identify any particular prong of

Maryland's long-arm statute upon which Plaintiff relies.   Such a deficiency, by itself, may be reason to dismiss.   Judge Blake suggested in *Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 704 & n.1 (D.Md. 2004), that dismissal might be appropriate if a plaintiff fails to identify a specific Maryland statutory provision authorizing jurisdiction either in the complaint or in an opposition to a motion to dismiss.

Notwithstanding this deficiency, the court will analyze whether Plaintiff can satisfy subsections (b)(1) or (b)(4).

**A. Subsection (b)(1)**

Subsection (b)(1) allows a court to exercise personal jurisdiction over a defendant who "transacts any business or performs any character of work or service in the State." Md. Code Ann., Cts. & Jud. Proc., § 6-103(b)(1).  Under this subsection, "a nonresident who has never entered the state, either personally or through an agent, may be deemed to have 'transacted business' in the state within the meaning of subsection (b)(1)." *Snyder v. Hampton Indus., Inc.*, 521 F.Supp. 130, 141 (D.Md. 1981). *See also Prince v. Illien Adoptions Int'l, Ltd.*, 806 F.Supp. 1225, 1228 (D.Md. 1992).  Defendants have accepted thirty-two Maryland residents into their program since 1984 and eight students are enrolled currently.  Defendants also concede that they have employed one Maryland-based advertising specialist, Advertising.com.  Although Defendants state that the specialist did

13

not handle any e-mail marketing when the e-mails in question were sent to Maryland, the court infers from this admission that Defendants have sent promotional e-mails at other times and that those e-mails may have targeted Maryland residents. There is precedent that suggests that through these actions Defendants might have transacted business or performed work or service within the meaning of subsection (b)(1). *See Potomac Design, Inc. v. Eurocal Trading, Inc.*, 839 F.Supp. 364, 370 (D.Md. 1993) (finding personal jurisdiction over a corporation that solicited business from a Maryland corporation, which lead to a contract to purchase the defendant's products); *Prince*, 806 F.Supp. at 1229 (finding that the defendant's solicitation of business in Maryland and the entering into a contract with a Maryland resident created a "continuous relationship" and therefore the transaction of business within subsection (b)(1)).

Defendants' contacts do not satisfy (b)(1), however, because the statute also requires that the cause of action arise from the act enumerated in the section, i.e., the transaction of business or performance of work or services. Md. Code Ann., Cts. & Jud. Proc., § 6-103(a). To the extent that Defendants satisfy subsection (b)(1) by providing educational services via the Internet to residents of Maryland and by promoting their programs to Maryland residents through e-mails and other methods of marketing, Defendants' contacts still do not satisfy subsection (b)(1) because

the cause of action – sending unsolicited bulk e-mail – does not arise from Defendants' contacts.  That is, Plaintiff has presented no evidence linking the cause of action to Defendants or an agent of Defendants, as required by subsection (b)(1).

The Court of Appeals' decision in *Realtime Gaming* addressed the issue of an agency relationship between the sender of the e-mail and the defendants.[6]  Plaintiff sued Realtime Gaming, KDMS, and an unknown co-defendant in state court alleging violations of § 14-3002.  KDMS, a business that developed software used by the online gaming industry, was a Delaware corporation with its principal place of business in Georgia.  Realtime Gaming, the holding company for KDMS, was a Georgia corporation with its principal place of business in Georgia.  The two companies shared the same president and chief executive officer.  *Id.* at 5.

Plaintiff filed the lawsuit after Travis Thom, a New Mexico resident, contracted with a bulk e-mail service to send 2.5 million unsolicited e-mail advertisements.  *Realtime Gaming*, 388 Md. at 7.  Mr. Thom was an "affiliate" of windowscasino.com.  As an affiliate, Mr. Thom could earn money by creating an affiliate webpage, goldenrhinocasino.com, that directed gamblers to windowscasino.com.  Windowscasino.com assisted Mr. Thom by helping to design the

---

[6] The same plaintiff in the present case brought the lawsuit in *Realtime Gaming*, on a similar cause of action involving § 14-3002.  The Court of Appeals issued its decision on June 22, 2005.  Plaintiff commenced litigation in the present case in Montgomery County on May 23, 2005.

15

website and the unsolicited commercial e-mails. At the windowscasino.com website, players could download KDMS software, which was retrieved from an IP address registered to KDMS.[7] Starting April 26, 2003, employees of Plaintiff received a total of 240 e-mails advertising Mr. Thom's Golden Rhino Casino over a twenty-four hour period.

Plaintiff alleged generally that Realtime Gaming and KDMS were involved directly in running windowscasino.com and therefore were involved in transmitting the e-mails. *Realtime Gaming*, 388 Md. at 12. Plaintiff claimed to have shown a *prima facie* case of personal jurisdiction over Realtime Gaming and KDMS because it received 240 e-mails from an affiliate of windowscasino.com, which contains links that lead to an IP address registered to Realtime Gaming and KDMS, and the e-mails in question contained a link that ultimately led to the same IP address. *Id*. at 26.

The Court of Appeals held that Plaintiff failed to establish a *prima facie* case for specific jurisdiction. The court explained that "BSI must make a *prima facie* showing that an agency or contractual relationship exists between Realtime Gaming and KDMS and windowscasino.com." *Realtime Gaming*, 388 Md. at 26. The court stated:

> An agency relationship "is a legal concept
> which depends upon the existence of required

---

[7] Windowscasino.com had obtained the right to use the KDMS software at its online casino. *Realtime Gaming*, 388 Md. at 6.

factual elements: the manifestation of the
principal that the agent shall act for him,
the agent's acceptance of the undertaking and
the understanding of the parties that the
principal is to be in control of the
undertaking." Although such a relationship is
not necessarily contractual in nature, it is
always consensual. The ultimate question is
one of intent, of both the principal and the
agent. We have recognized three factors as
having particular relevance to the
determination of an agency relationship.
These factors are:
> (1) The agent's power to alter the
> legal relations of the principal;
> (2) The agent's duty to act
> primarily for the benefit of the
> principal; and
> (3) The principal's right to control
> the agent.
The three factors are evaluated within the
totality of the circumstances. The presence
of all three factors is not required for a
finding of an agency relationship.

*Id*. at 26-27 (internal citations omitted). The "only evidence" of

a relationship between windowscasino.com and Realtime Gaming and

KDMS was the fact that the website contained a link to an IP

address registered to KDMS where customers could download the

defendants' gaming software. The court found that a "mere link

with no more compelling evidence is insufficient to create the

necessary nexus between Realtime Gaming and KDMS, with

windowscasino.com and Thom." *Id*. at 28.

Although *Realtime Gaming* addressed the due process prong of

personal jurisdiction, the agency issue is equally relevant to the

first prong involving the long-arm statute. In the present case,

Plaintiff asserts that personal jurisdiction exists because 1,007

e-mails were targeted to e-mail addresses belonging to Plaintiff and "Defendants initiated, conspired to initiate, and assisted in the initiation of commercial electronic mail messages to recipients in Maryland, including Plaintiff." (Paper 2, at ¶ 10).

Defendants respond that Plaintiff alleges no facts that connect the e-mails to Defendants.  In a supporting affidavit, Mr. Patterson states that he has reviewed the sample e-mails that Plaintiff provided and that Defendants did not send those e-mails and did not authorize anyone to send those e-mails.  (Paper 33, attach. 1, ¶¶ 2, 3, Patterson supp. aff.).  He asserts that Defendants have "conducted an internal investigation relating to [Defendants'] email marketing activities and has found that no KWU employees have any knowledge of how the emails originated or who sent them." *Id.* at ¶3.

Plaintiff has not made a *prima facie* showing that an agency or contractual relationship exists between Defendants and "bargain-warrior.com," "Media Solutions," and "Stargazerdream" because Plaintiff has alleged no facts that connect Defendants to these senders.[8]   Plaintiff states that false return addresses,

---

[8] The facts in the present case are different from those in *Beyond Systems, Inc. v. Keynetics, Inc.*, 422 F.Supp.2d 523 (D.Md. 2006), another lawsuit brought by Plaintiff based on Maryland's unsolicited bulk e-mail statute, Md. Code Ann., Com. Law § 14-3002. In *Keynetics*, where jurisdictional discovery was allowed, the alleged senders of the spam e-mails were direct affiliates of the defendants. *Id.* at 546.  The issue, therefore, was whether the agency relationship was sufficient to hold the defendants liable.
(continued...)

misappropriated identities, overseas addresses, and other techniques are used to conceal the identity of the author or the initiator of the e-mail. (Paper 25, at 2). Plaintiff, however, alleges no facts to suggest that Defendants used these or other methods to conceal their identities. *See America Online, Inc. v. Ambro Enter.*, No. Civ. A. 04-1498, slip op. 2005 WL 2218433 at *3 n.3 (E.D.Va. Sept. 8, 2005) (finding personal jurisdiction over one defendant accused of selling stolen lists of the plaintiff's database and another defendant who registered domain names associated with unsolicited e-mails and served as the technical and/or administrative contact for co-conspirators); *Verizon Online Servs. Inc. v. Ralsky*, 203 F.Supp.2d 601, 622 (E.D.Va. 2002) (finding personal jurisdiction where one defendant had ties to an ISP from which the unsolicited e-mail messages were sent and another defendant was connected to a telephone line from which the e-mails originated).

To support its argument for personal jurisdiction, Plaintiff relies on a number of cases, none of which involve Maryland's long-

---

[8](...continued)
Here, Defendants did not authorize the sending of the e-mails in question, and Defendants have expressly stated that their employees have never heard of the entities that sent the e-mails.

The present case also is distinguishable from *MaryCLE, LLC v. First Choice Internet, Inc.*, 166 Md.App. 481 (2006), another case dealing with § 14-3002. There, the agency relationship between the defendant and the sender of the e-mails was not at issue.

arm statute.[9]  (Paper 15, at 9-15).   For instance, Plaintiff cites *Verizon v. Ralsky*.  This case is distinguishable because the *Ralsky* plaintiffs alleged sufficient facts connecting the defendants to the unsolicited e-mails.  *Ralsky*, 203 F.Supp.2d at 622.

For the same reason, Defendants' contacts do not satisfy the due process prong of personal jurisdiction.  To determine whether the exercise of specific jurisdiction comports with due process, a court considers (1) the extent to which the defendant has purposefully availed himself or herself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable."[10]  *See, e.g., Carefirst*, 334 F.3d

---

[9] Plaintiff does cite two Fourth Circuit cases, *ALS Scan* and *Carefirst*, in which the court held that the Internet contacts were insufficient to find personal jurisdiction based on Maryland's long-arm statute.  Plaintiff distinguishes these cases, stating that those cases involved websites, while the case at bar involves the use of e-mails.  (Paper 15, at 9 n.3).  This statement is inconsistent with assertions throughout Plaintiff's briefs that the court should consider Defendants' website in its analysis.  *See, e.g., id.* at 15.

[10] Courts have identified subsection (b)(1) as conferring specific jurisdiction.  *See Young Again Products, Inc. v. Acord*, 307 F.Supp.2d 713, 716 (D.Md. 2004); *Johansson Corp*, 304 F.Supp.2d at 704.  *See also Presbyterian Univ. Hosp. v. Wilson*, 337 Md. 541, 552 (1995)(explaining that specific jurisdiction involves an expanded "inquiry into the precise nature of the defendant's contacts with the forum, the relationship of these contacts with the cause of action, and a weighing of whether 'the nature and extent of contacts . . . between the forum and the defendant . . . satisfy the threshold demands of fairness.'").

at 397; *Johansson Corp.*, 304 F.Supp.2d at 704.   As discussed
previously, Defendants' contacts do not satisfy the due process
prong because Plaintiff's claims involve unsolicited bulk e-mail
that do not arise out of Defendants' contacts with Maryland.

Accordingly, Plaintiff has failed to establish a *prima facie*
case of personal jurisdiction pursuant to subsection (b)(1).

**B. Subsection (b)(4)**

The lack of a showing of an agency relationship between
Defendants and the senders of the e-mails in question also prevents
the court from asserting personal jurisdiction based on subsection
(b)(4).   Like subsection (b)(1), subsection (b)(4) requires that
the tortious injury be caused directly by a defendant or the
defendant's agent.   Md. Code Ann., Cts. & Jud. Proc., § 6-
103(b)(4).

Moreover, Defendants' contacts with Maryland are not
continuous and systematic enough to satisfy subsection (b)(4).
Where the contacts with the forum state involve the Internet, both
the Fourth Circuit and the Court of Appeals have stated that an
entity must do something more than merely place information on the
Internet.   *See Carefirst*, 334 F.3d at 400; *ALS Scan*, 293 F.3d at
714; *Realtime Gaming*, 388 Md. at 25.   A defendant "must have acted
with the 'manifest intent' of targeting Marylanders." *Carefirst*,
334 F.3d at 400.   Whether the defendant intended to target Maryland
can be determined from the character of the website at issue. *Id.*

21

A court may consider other contacts in addition to a defendant's Internet contacts. For instance, in *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1198 (4th Cir. 1993), the court found there was no personal jurisdiction even though the defendant employed thirteen Maryland residents and two district managers to oversee them; district managers held meetings in Maryland three times a year; the defendant advertised in local newspapers; the sales of the defendant's products amounted to $9,000,000-$13,000,000 annually; the defendant held regional and national meetings in Maryland; and the defendant contracted with a Maryland firm for some of its research.

Because Defendants offer educational services, a District of Maryland case involving claims against an out-of-state university also provides guidance.[11] In *Hardnett v. Duquesne Univ.*, 897 F.Supp. 920 (D.Md. 1995), the parents of a Maryland student brought a claim against Duquesne University in Pennsylvania after the student was injured while attending a rock concert at the school's arena. The university's contacts included sending promotional materials and a letter of acceptance to the Maryland student and granting the student a partial-scholarship. In addition, the university had a toll-free number available for further inquiries, it mailed video presentations into the state, and there was an

---

[11] The court recognizes that there are significant differences between a traditional university and an online university.

allegation that the school had considered sending a recruiter to a college fair in Maryland.[12]   The court found that Maryland's long-arm statute did not confer either general or specific personal jurisdiction over the defendant.

> Such contacts, quite simply, are not sufficiently "continuous and systematic" to make Duquesne University susceptible to every sort of claim that might be filed in Maryland, including those unrelated to the specific transaction in this case. *[The plaintiff] cites no case in which a university from a nonforum state has been held subject to the general jurisdiction of a forum state* . . .

*Id.* at 923 (footnote omitted)(emphasis added).

In the present case, Plaintiff provides several pages from Defendants' interactive website that show Maryland-based faculty, the availability of an admissions counselor, and a list of Maryland organizations that provide tuition reimbursement.   The overall content provides general information unrelated to Maryland such as program specifics, the faculty, alumni, "Day in the Life," "Testimonials," and an "E-Global Library."   Thus, the pages do not show that Defendants purposefully directed Internet activity into Maryland.   *See Carefirst*, 334 F.3d at 401 (noting that the website's only effort to reach out to Marylanders was a general donation request and that overall the website stressed its Chicago

---

[12]   The court noted that the university's plan to send a recruiter to attend a national college fair occurred more than three years before the alleged accident and therefore would not be taken into account because the contacts are measured is as of the time the claim arose.   *Hardnett*, 897 F.Supp. at 923.

connections); *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002) (observing that the website's content was aimed at Connecticut and did not target a Virginia audience).  Even when considered with other contacts (i.e. Defendants' use of a referral system that may generate leads in Maryland, the acceptance of Maryland residents into the program, and the Internet advertising), these contacts fall short of being "continuous and systematic."  In addition, Mr. Patterson's affidavits support Defendants' assertions that they have not targeted Maryland, and Plaintiff has alleged no facts that call the veracity of Mr. Patterson's affidavits into question.

Accordingly, Plaintiff has failed to meet its burden with respect to general jurisdiction pursuant to subsection (b)(4) on the current record, and as will be discussed, the court declines to permit discovery.[13]  None of the parties has asked the court to transfer the case to another court that has personal jurisdiction over Defendants.  Because personal jurisdiction may be proper in at least two jurisdictions, California and Wyoming, and Plaintiff has provided no argument with respect to which is the preferred forum, the court will not exercise its authority to transfer the case *sua sponte*.

---

[13] In light of the foregoing, the court need not address Defendants' preemption argument.

## C. Discovery on the Issue of Personal Jurisdiction

Plaintiff has asked for discovery in order to rebut Defendants' contention that they have insufficient contacts to support personal jurisdiction. (Paper 25). The Federal Rules of Civil Procedure permit discovery that is broad in scope and freely permitted, but district courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." *Mylan*, 2 F.3d at 64 (quoting *In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C.Cir. 1981)) (alterations in original). The court has discretion to deny jurisdictional discovery "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state." *Carefirst*, 334 F.3d at 402-03. *See also ALS Scan*, 293 F.3d at 716 ("ALS Scan has not suggested that the jurisdictional facts asserted by [the defendant] in its affidavits are inaccurate. At most, it made some conclusory allegations in support of its request for discovery.").

Plaintiff asserts that the "hurdles created by the Internet and email" make it difficult to trace the connection between the e-mails and the "perpetrator." (Paper 25, at 2). Plaintiff also asserts that, based on the number of e-mails it has received, "it is likely that similar quantities of e-mails were sent to other recipients in Maryland." *Id*. at 3. Plaintiff would like additional information, such as the number of individuals who "have ever applied for a course," the amount of revenues Defendants have

derived from Maryland, the level of interaction Maryland residents have had with Defendants' website, whether Defendants' lead-generation program has resulted in referrals from Maryland, and information relating to Defendants' Internet advertising. Plaintiff states generally that Defendants have understated their contacts with Maryland.

The affidavits Defendants submitted adequately address the nature of their involvement with Maryland generally and with respect to the e-mails in question specifically.   In contrast, Plaintiff has provided the court with no evidence to refute Mr. Patterson's declarations.   Instead, it provides only speculation and conclusory allegations that there may be additional contacts. Because Plaintiff's request states that there may be additional contacts but offers no facts to support this suggestion, Plaintiff's request is akin to a fishing expedition.[14]   *See Carefirst*, 334 F.3d at 403 (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988).   Therefore, Plaintiff's request for jurisdictional discovery is not warranted, and will be denied.

---

[14] This court's holding is consistent with the holding in *Keynetics*, where discovery was granted on the personal jurisdiction issue.   In *Keynetics*, the entities that sent the unsolicited e-mails were direct affiliates of the defendants, thus, the discovery was "more than a 'fishing expedition.'"   *Keynetics*, 422 F.Supp.2d at 548.

**D.   Remaining Motions**

Plaintiff has filed a motion for leave to file supplemental authority in order to bring the court's attention to a case decided last month.  (Paper 38).  Defendants do not object to Plaintiff's motion.  (Paper 39).  The court grants Plaintiff's motion and has considered the case, although the decision does not change this court's result.  In addition, Defendants have filed a motion for leave to supplement the record.  (Paper 39).  In light of the court's grant of dismissal, Defendants' motion is denied as moot.

**IV.  Conclusion**

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction is granted and Plaintiff's motion to take jurisdictional discovery is denied.  The court also will grant Plaintiff's motion to file supplemental authority and denies as moot Defendants' motion to supplement the record. A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge