IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

                                    :

BEYOND SYSTEMS, INC.

                                    :

    v.                              :  Civil Action No. DKC 2005-2446

                                    :

KENNEDY WESTERN UNIVERSITY,
et al.                              :

### MEMORANDUM OPINION

Presently pending and ready for resolution in this case is the motion of Plaintiff Beyond Systems, Inc., for reconsideration of the court's May 31, 2006, order (paper 44), the motion of Plaintiff for an extension of time to file its reply memorandum (paper 47), and the motion of Defendants for leave to file surreply (paper 51). The issues are briefed fully and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, the court will deny Plaintiff's motion for reconsideration, grant Plaintiff's motion for an extension of time to file its reply, and deny as moot Plaintiff's motion for leave to file surreply.[1]

### I.  Background

In its complaint, Plaintiff alleged that Defendants Kennedy Western University; Kennedy-Western University; KWU Acquisition, Inc.; Kennedy-Western Educational Corp.; and Kennedy-Western

---

[1] Plaintiff sought a one-hour extension of time to file its reply memorandum due to technical difficulties in formatting and e-filing the reply with its exhibits.  (Paper 47, at 1).

University, LLC, violated Md. Code Ann., Com. Law § 14-3002, relating to the transmission of unauthorized, false or misleading information through electronic mail. Specifically, Plaintiff alleged that Defendants violated § 14-3002 by sending 1,007 commercial e-mail messages promoting online college degrees offered by Defendants, and those e-mails either contained false or misleading information about the origin or transmission path or contained false or misleading information in the subject line.

On May 31, 2006, this court issued an order and accompanying memorandum opinion which (1) dismissed Plaintiff's claims for lack of personal jurisdiction and (2) denied Plaintiff's motion for discovery on the issue of personal jurisdiction. Plaintiff filed a motion for reconsideration pursuant to Fed.R.Civ.P. 59(e) on June 12, 2006.

## II.  Standard of Review

A Rule 59(e) motion will be granted in three circumstances:

> "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 19[9]8). If relying on new evidence, "a party must produce a legitimate justification for not presenting the evidence during the earlier proceeding." *Small v. Hunt*, 98 F.3d 789, 798 (4th Cir. 1996) (internal quotation marks omitted).

*Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006). The United States Court of Appeals for the Fourth Circuit has noted that

"'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998), *cert. denied*, *Am. Nat. Fire Ins. Co. v. Pac. Ins. Co.*, 525 U.S. 1104 (1999) (quoting 11 Wright et al., *Federal Practice and Procedure* § 2810.1, at 124 (2nd ed. 1995). The purpose of a Rule 59(e) motion is not "to enable a party to complete presenting his case after the court has ruled against him" or to "relitigate old matters." *Pac. Ins. Co.*, 148 F.3d at 396 (internal quotation marks omitted).

## III. Analysis

Plaintiff asserts that the court should reconsider its ruling "based on the discovery of additional facts, recent changes in controlling law, and to avoid manifest injustice to the Plaintiff, who has adequately pled facts at least sufficient to allow discovery." (Paper 44, at 1-2). More specifically, Plaintiff maintains that (1) jurisdiction was pled properly; (2) the court should have granted leave to conduct discovery; and (3) new evidence has become available that supports Plaintiff's allegations and calls into question statements Defendants made in their opposition to personal jurisdiction.

## A.    Lack of Personal Jurisdiction

Plaintiff contends that its complaint adequately pled the existence of personal jurisdiction pursuant to Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc., § 6-103. Plaintiff

states that its "Complaint alleges with the greatest particularity
possible the process via which Defendants 'engage in any business
or perform any character of work or service in the State' as
required under Md. Code Ann., Cts. & Jud. Proc., § 6-103(b)(1)."
(Paper 44, at 2).  Plaintiff further asserts that it alleged "with
the greatest particularity possible" the process by which personal
jurisdiction is proper under subsection § 6-103(b)(4).  *Id.* at 2-3.
Plaintiff also argues that it sufficiently alleged that Defendants
acted with the manifest intent of targeting Marylanders.  *Id.* at 3.

Reargument of the personal jurisdiction issue is not permitted
in a motion for reconsideration.  Nor has Plaintiff established
that the court committed a clear error of law or that there was a
"manifest injustice to the Plaintiff."

Plaintiff's complaint did not allege jurisdiction "with the
greatest particularity possible."  A federal district court may
exercise personal jurisdiction over a non-resident defendant only
if the Maryland long-arm statute confers jurisdiction and assertion
of jurisdiction is consistent with constitutional due process.  As
noted in the opinion, Plaintiff did not identify any particular
prong of the long-arm statute as the basis for personal
jurisdiction either in the complaint or in the motion papers.
Notwithstanding this deficiency, the court analyzed jurisdiction
pursuant to § 6-103(b)(1) and (b)(4).  The court held that it could
not assert personal jurisdiction based on Defendants' contacts with

4

the state of Maryland and the 1,007 e-mails in question.
Plaintiff's complaint alleged no facts linking the e-mails to
Defendants.    Defendants, on the other hand, provided two
declarations from Robert Patterson, the chief operating officer at
Kennedy-Western University, who stated that Defendants did not send
the e-mails and did not authorize anyone to send the e-mails.  As
the court explained, the lack of a showing of a relationship
between Defendants and the e-mails in question prevented the court
from asserting personal jurisdiction over Defendants pursuant to
subsections (b)(1) and (b)(4) of Maryland's long-arm statute.  For
the same reason, Defendants' contacts did not satisfy the due
process prong of personal jurisdiction.   Plaintiff has cited no
authority that shows the court made a clear error of law.
Plaintiff also presents no argument to support its conclusory
assertion that there was a "manifest injustice to the Plaintiff,
who has adequately pled facts at least sufficient to allow
discovery."

## B.   Denial of Request for Discovery

Plaintiff asserts that the court should have granted it
discovery on the issue of personal jurisdiction.  First, Plaintiff
re-argues that it sufficiently alleged a connection between
Defendants and the senders of the 1,007 e-mails.  Second, Plaintiff
argues that the transmission of bulk e-mails involves several
groups of actors and "[t]ypically the conduct of these actors, who

are aware of the risks inherent in sending bulk email due to statutes like MCEMA [Md. Code Ann., Com. Law § 14-3002], keep their conduct quiet and concealed.  Thus, there is not likely to be an outward display of the collaboration, and the specific steps taken, other than the outcome: the transmission of the emails." (Paper 44, at 5).  Third, citing *Mary CLE, LLC v. First Choice Internet, Inc.*, 166 Md.App. 481, 538 (2006), and other cases, Plaintiff asserts that the Maryland Court of Appeals held recently that "it is not the law that . . . agents can escape personal liability for tortious violations of a consumer protection statute committed by the corporation merely because they were not 'hands on' at every step of the way."[2]  (Paper 44, at 5-6).  Plaintiff contends that Defendants "took great pains to hide their Maryland contacts," *id*. at 6, and it should have been given the opportunity to test the validity of the assertions in Mr. Patterson's declarations. Plaintiff insists that its request for discovery was more than a "fishing expedition."   Finally, Plaintiff argues that it sufficiently alleged co-conspirator liability.  *Id*. at 6-7.

Plaintiff's arguments are without merit.  First, it is questionable whether Plaintiff did, in fact, request discovery regarding the connection between the 1,007 e-mails and Defendants. In its motion, Plaintiff stated that it "wishes to explore the

---

[2] The case was decided by the Court of Special Appeals, not the Court of Appeals.

6

facts that either support or disprove the allegations to Defendants' conduct reaching in Maryland, and Defendants' assertion that it has only minimal contacts here." (Paper 25, at 4). Plaintiff then identified specific areas for which discovery was needed: information relating to the number of Maryland residents who participated as a student or employee in Defendants' educational programs; information relating to Defendants' interactive Web site; information relating to Defendants' commission lead-generation program in Maryland; information relating to Maryland corporations that reimburse for tuition; and information relating to KWU's Verizon SuperPages and Yellow Pages advertising, which purportedly targets Maryland residents. (Paper 25, at 4-5). Plaintiff cannot now come forward to ask for discovery that it did not previously request. Second, Plaintiff made the same arguments in support of its request for discovery, the arguments were rejected by the court, and thus Plaintiff is attempting to relitigate an old matter. Finally, Plaintiff's reliance on *Beyond Systems, Inc. v. Keynetics, Inc.*, 422 F.Supp.2d 523 (D.Md. 2006), is misplaced. As explained in the memorandum opinion, the facts in *Keynetics* were different in that the alleged senders of the spam e-mails were direct affiliates of the defendants, and thus, the *Keynetics* plaintiff had made a sufficient showing of a relationship between the senders of the e-mails and the defendants to warrant discovery.

## C.   New Facts

Plaintiff claims that it recently obtained documents that were produced by KWU in discovery in another case, *Hypertouch, Inc. v. Kennedy-Western University*, No. CV-05203-SI (N.D.Cal. 2004), a similar lawsuit filed by a California plaintiff against the same Defendants.[3]   Plaintiff asserts that the documents "support Plaintiff's allegations and call into question statements" made by Mr. Patterson in his Supplemental Declaration.  (Paper 44, at 8-9). The "new evidence" Plaintiff provides consists of three e-mail exhibits, which will be discussed in more detail below.

Defendants respond that these exhibits are not "new facts" because they were available to Plaintiff as early as August 5, 2005, the date that Shea Park, a third-party witness, produced the documents in the *Hypertouch* litigation.[4]   Defendants contend that Plaintiff had "numerous opportunities to bring the Exhibit E-mails to the Court's attention after their August 2005 production" and that the exhibits "were in Plaintiff's actual or constructive possession" before the papers addressing personal jurisdiction were

---

[3] Defendants' motion for summary judgment in this case was granted.  *See Hypertouch, Inc. v. Kennedy-Western University*, 2006 WL 648688 (N.D.Cal. Mar. 8, 2006).

[4] Defendants also dispute that the e-mail exhibits "originate[d] from KWU," as Plaintiff claims in its motion for reconsideration.  Defendants further argue that the substance of the e-mails "does not constitute admissions by KWU as to the veracity of any facts stated within them" pursuant to Fed.R.Evid. 801(d)(2).  (Paper 45, at 6).

filed in the present case . (Paper 45, at 6).  Finally, Defendants
assert that the exhibits have no evidentiary value.

Plaintiff responds by pointing out that it has never been a
party to the California action, it does not control Hypertouch (the
plaintiff in the California action), and it cannot be charged with
notice or knowledge of information from the *Hypertouch* action.
Plaintiff also responds to Defendants' assertion that there is no
evidentiary value to the exhibits.

The United States Court of Appeals for the Fourth Circuit has
stated that:

> [T]he standard governing relief on the basis
> of newly discovered evidence is the same
> whether the motion is brought under rule 59 or
> rule 60, *United States Fidelity & Guaranty Co.
> v. Lawrenson*, 334 F.2d 464, 475 n. 2 (4th
> Cir.), *cert. denied*, 379 U.S. 869, 85 S.Ct.
> 141, 13 L.Ed.2d 71 (1964), and rule 60
> requires that a party demonstrate:
>
>> (1) the evidence is newly discovered
>> since the judgment was entered; (2)
>> due diligence on the part of the
>> movant to discover the new evidence
>> has been exercised; (3) the evidence
>> is not merely cumulative or
>> impeaching; (4) the evidence is
>> material; and (5) the evidence is
>> such that is likely to produce a new
>> outcome if the case were retried, or
>> is such that would require the
>> judgment to be amended.
>
> *Taylor v. Texgas Corp.*, 831 F.2d 255, 259 (11th
> Cir. 1987) (citations omitted); *see also
> Garrick v. Kelly*, 649 F.Supp. 607 (E.D.Va.
> 1986), *aff'd,* 842 F.2d 1290 (4th Cir. 1988)
> (table).  Thus, in order to support a motion
> for reconsideration, "the movant is obliged to

9

> show not only that this evidence was newly
> discovered or unknown to it until after the
> hearing, but also that it could not with
> reasonable diligence have discovered and
> produced such evidence at the hearing."
> *Frederick S. Wyle P.C. v. Texaco, Inc.*, 764
> F.2d 604, 609 (9th Cir. 1985) (citations and
> quotation marks omitted); *see also Stiers v.
> Martin*, 277 F.2d 737 (4th Cir. 1960). Evidence
> that is available to a party prior to entry of
> judgment, therefore, is not a basis for
> granting a motion for reconsideration as a
> matter of law. *Frederick S. Wyle P.C.*, 764
> F.2d at 609; *see also Taylor*, 831 F.2d at 259.

*Boryan v. United States*, 884 F.2d 767, 771-72 (4th Cir. 1989).

Plaintiff never states clearly when it obtained this "new evidence." In its motion to reconsider, Plaintiff states generally that it "recently obtained" these documents. *Id*. at 8. Even in its reply memorandum, Plaintiff sidesteps the issue of when exactly it obtained the information and merely asserts that it "indeed obtained from Hypertouch some key information that was obtained via discovery in the California action, *most of it after the Opposition was filed*."[5] (Paper 46, at 1)(emphasis added). Thus, Plaintiff has failed to meet its burden with respect to the first element of the test. Plaintiff also has not shown that it used due diligence to obtain the new information before the court issued its opinion. Although Plaintiff was not a party to the *Hypertouch* litigation, it

---

[5] Plaintiff also states that the information became available "only after the Motion was filed." (Paper 46, at 7). To the extent that Plaintiff argues it obtained the records after the motion to dismiss, opposition and reply papers were filed, Plaintiff could have filed a motion with the court to supplement the record. It did not do so.

was very aware of the litigation and apparently has been able to obtain discovery from the case, which raises the question of whether Plaintiff exercised due diligence to obtain the evidence before the court issued its ruling.  Plaintiff's argument fails to address due diligence, even though Plaintiff bears the burden on this issue.

Assuming, arguendo, that the exhibits are "new evidence" and that they are authentic, the exhibits do not bolster Plaintiff's allegations of a connection between the senders of the 1,007 e-mails and Defendants.

**1. Exhibit 1**

This exhibit consists of an e-mail thread that starts with a June 17, 2004, e-mail complaint from Andrew Meredith sent to "Bob Patterson" and "abuse@kw.edu" objecting to what appears to be a spam e-mail from "bargain-warrior.com."[6]  The exhibit shows that the e-mail complaint was forwarded to Rob Sternburg, a marketing specialist at Kennedy-Western University, who then sent an e-mail to Shea Park at "ad-spark.com" asking for the identity of the provider.  Ms. Park responded by sending an e-mail to Steve Berns, saying "[p]lease stop working with this vendor and let me know who

---

[6]  In opposing Defendants' motion to dismiss, Plaintiff provided three examples of the 1,007 e-mails in question.  The sample e-mails were from "bargain-warrior.com," which has an address in Malaysia; "Media Solutions," which has an address in California; and "Stargazerdream," which has an address in Florida.

they are.   The email they are sending is not complaint with can spam [sic].   And does not represent KWU's acceptable ad copy."[7] (Paper 44, ex. 1).

The exhibit does not support Plaintiff's allegations of a relationship between Defendants and bargain-warrior.com.   Rather, the exhibit demonstrates that, when the e-mail was brought to the attention of Defendants, their response was to stop all e-mail advertising while they investigated the complaint.   Although the exhibit disputes Mr. Patterson's declaration that he had never heard of bargain-warrior.com, it does not support Plaintiff's claim that "Defendant have [sic] knowledge of how the e-mails originated and who sent them" and that "the Defendant knew exactly how to get in touch with the advertisers responsible for the e-mail messages sent on the Defendant's behalf."   (Paper 44, at 10).   Plaintiff also argues that the bargain-warrior.com e-mail promotes a single service (Kennedy-Western University), advertising costs money, and the vendor of the product being advertised normally is the moving force that causes the advertisement to be issued, and therefore, there is a connection between bargain-warrior.com and Defendants. *Id*. at 9.  This argument is built on conjecture.  Finally, although

---

[7] From the evidence, it appears that Steve Berns is president of Peak Advertizing and Peak Advertising is one of the companies that Defendants hire to do on-line advertising.   The exact connection between Peak Advertising, Contour Media Group, another company identified in the exhibits, and Ms. Park is not clear from the exhibits.

the e-mail supports Plaintiff's contention that Defendants use bulk
e-mail advertising, Defendants have never disputed this point.

**2. Exhibit 2**

This exhibit consists of another e-mail thread. In the first
entry, Jake Adams, of Contour Media Group, discuses with Mr. Berns
the need to send an invoice "for KWU."  Mr. Berns tells Mr. Adams
that he can resume sending mail for KWU.  There is discussion in
the thread about the number of KWU leads and a need to send an
invoice to pay for the leads.  The next entry is the June 17, 2004,
complaint by Mr. Meredith, followed by an e-mail from Mr. Berns to
Mr. Adams requesting an immediate phone call to discuss Mr.
Meredith's complaint.  The next entry is another message from Mr.
Berns to Mr. Adams, again saying that he needs information on the
complaint.  The next entry is from "Tim" in the IT Department at
Countour Media Group saying that all mailing for KWU was halted and
providing information about Mr. Meredith.  The final entry is a
message from Mr. Berns to Ms. Park saying, "I found it! Here is the
info you need."  (Paper 44, ex. 2).  Again, this e-mail fails to
demonstrate any connection between bargain-warrior.com and KWU, and
merely demonstrates that e-mail messages by Contour Group were
halted while the source of the e-mail was investigated.

**3. Exhibit 3**

This e-mail thread consists of an e-mail from an unidentified
person to Ms. Park asking if "we use ValueMail.com" because the

recipient had received five opt-in e-mails from ValueMail in a
single day.  Ms. Park forwarded the e-mail to Cheryl Yuan at
"Quinstreet.com" and asked whether she mails KWU e-mail advertising
through "ValueMail.com."  Ms. Park stated that there was a concern
that five of the same offers were sent in a single day to the same
person, the "COO."[8]  Ms. Yuan responded that "[a]s far as I know,
this company was never approved to do any KWU email marketing."
(Paper 44, ex. 3).  Plaintiff asserts that the e-mails "show that
Mr. Patterson [the chief operating officer of Kennedy-Western
University] himself took steps to inquire as to the marketing
efforts undertaken by Quinstreet on KWU's behalf when he contacted
Ms. Park via e-mail to inquire as to whether 'we use
ValueMail.com.'" (Paper 44, at 11).  The court disagrees.  The
original sender of the e-mail is not identified, unlike the senders
of the e-mail messages in the previous exhibits.  Furthermore, the
e-mail does not support Plaintiff's contention that "[t]he
reasonable inference is that KWU used so many email marketers, it
had trouble keeping track of them."[9]  (Paper 44, at 12).

---

[8] The relevance of this exhibit is not entirely clear.  The
exhibit appears to relate to a Web site run by Quinstreet.com that
lists health care schools by state; Kennedy Western University was
among the schools listed.  Mr. Patterson had stated in his
Supplemental Declaration that Quinstreet.com is unaffiliated with
KWU.

[9] In its reply memorandum, Plaintiff continues to press the
issue of Defendants' connection to Quinstreet. Whether or not
Quinstreet is a master affiliate of Kennedy Western University is
(continued...)

Even if the court considered these exhibits as "new evidence," they do not change the court's conclusion that Plaintiff has failed to allege facts or proffer evidence of a connection between the 1,007 e-mails and Defendants.  The e-mails also do not alter the court's decision to deny jurisdictional discovery.  As in the earlier motion, Plaintiff still has not come forward with evidence to support its allegations of a connection, and its attempt to obtain jurisdictional discovery remains a "fishing expedition."[10]

## IV.  Conclusion

For the foregoing reasons, Plaintiff's motion for reconsideration will be denied, Plaintiff's motion for an extension of time to file its reply is granted, and Plaintiff's motion for leave to file surreply is denied. A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge


---

[9](...continued)
immaterial.  The cause of action arises from the 1,007 e-mails alleged in Plaintiff's complaint, and nothing in the "new evidence" provided by Plaintiff suggests a connection between Quinstreet and the 1,007 e-mails or that Quinstreet is responsible for sending out e-mails that violate § 14-3002.  Finally, as already noted, Defendants do not dispute that they engage in bulk e-mail advertising.

[10] In light of the foregoing, Defendants' motion for leave to file surreply to address the documents in Plaintiff's reply memorandum is moot.